**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AFSCME LOCAL 2186, et al.**, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | 19-cv-5287-TJS |
| | : | |
| **CITY OF PHILADELPHIA, et al.**, | : | |
| | : | |
| Defendants. | : | |

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT

Plaintiffs AFSCME District Council 47, Locals 2186 and 2187, and AFSCME District Council 33, Local 159 ("Plaintiffs"), and Defendants the City of Philadelphia, James F. Kenney, Robert Dubow, and Christian Dunbar ("Defendants"), by and through undersigned counsel, jointly move this Honorable Court to approve the Settlement Agreement, inclusive of releases of Fair Labor Standards Act (FLSA) wage and hour claims, reached between the parties. In support, the parties aver as follows:

### Procedural Background

1.       On November 8, 2019, Defendants removed to the United States District Court for the Eastern District of Pennsylvania the FLSA complaint filed by Plaintiffs in the Court of Common Pleas (Docket No. 1).

2.       Shortly thereafter, the parties engaged in the first of seven settlement conferences with United State Magistrate Judge Jacob Hart.

3.       With the assistance of Judge Hart, the parties were able to reach a settlement agreement resolving the merits of this matter in November of 2020. A copy of the Settlement Agreement is attached hereto as **Exhibit A**.

4.      Because Plaintiffs brought claims under the FLSA, judicial approval of the Settlement Agreement appears required pursuant to 29 U.S.C. § 216(b).

<u>"Bona Fide" Dispute and Judicial Approval of FLSA Settlements</u>

5.      Although most FLSA claims are brought by a collective or class of employees, courts in the Third Circuit have recognized a need for judicial approval of settlement agreements in FLSA matters where plaintiffs did not bring claims as a collective or class action. <u>See, e.g.</u>, <u>Kraus v. PA Fit II, LLC</u>, 155 F. Supp. 3d 516, 526 (E.D. Pa. 2016) (finding "judicial scrutiny of a private FLSA settlement agreement [between employer and single employee] to ensure it is fair and reasonable to the employee . . . essential to accomplishing the FLSA's purpose.") (Robreno, J).

6.      When employees bring a private action under the FLSA and then present the District Court with a proposed settlement agreement, the District Court may determine that the settlement terms are a "fair and reasonable resolution of a bona fide dispute over the FLSA provisions." <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350, 1354 (11th Cir. 1982). Courts in the Third Circuit routinely look to the factors in <u>Lynne's Food Stores</u> when deciding whether to approve a settlement. <u>Farris v. Nat'l Forensic Consultants, Inc.</u>, No. CV 18-3052, 2019 WL 2502267, at *2-3 (E.D. Pa. Apr. 24, 2019), report and recommendation adopted, No. CV 18-3052, 2019 WL 2511894 (E.D. Pa. May 14, 2019).

7.      A dispute is "bona fide" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability." <u>Ligmore v. Hosp. of Univ. of Pa.</u>, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007) (quoting <u>Morris v. Penn Mut. Life Ins. Co.</u>, 1989 WL 14063, at *4 (E.D. Pa. Feb. 21, 1989)), and when a settlement "reflect[s] a reasonable compromise of disputed issues, rather than a mere waiver of statutory rights brought about by an employer's

overreaching." <u>Brumley v. Camin Cargo Control, Inc.</u>, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012 (citation omitted). "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." <u>Kraus</u>, 155 F. Supp. 3d at 530.

8.     Because the FLSA was designed both to afford workers minimum protection *and* ensure that covered employees would receive its protections, <u>Barrentine v. Arkansas–Best Freight Sys., Inc.</u>, 450 U.S. 728, 739 (1981), declining to assess a proposed FLSA settlement "leaves the parties in an uncertain position" as to their statutorily protected rights. <u>Carillo v. Dandan Inc.</u>, 51 F.Supp.3d 124, 131 (D.D.C. 2014).

<u>Joint Request for Court Approval Despite Disagreement Over Whether Dispute is "Bona Fide"</u>

9.     In the instant matter, the sole plaintiffs are three labor unions, alleging that they have standing to represent their own and their members' interests.  The City maintains that the plaintiffs have no cognizable interests of their own and that they lack standing to represent any averred cognizable interests by individual union members.  Therefore, it filed a motion to dismiss the second amended complaint (Docket No. 22.), which plaintiffs opposed (Docket No. 30).  The motion was pending when the parties settled this matter after exploring the strengths and weaknesses of their respective cases, the equities involved, and the risks associated with proceeding with litigation.

10.     Because there has been no judicial resolution of the factual and legal issues, the plaintiffs maintain, and the City disputes, that there is a "bona fide" dispute under the FLSA.  In the interest of finality, all parties nonetheless jointly request that the Court approve the attached Settlement Agreement for the reasons set forth below.

<u>The Settlement Agreement is a Fair and Reasonable Resolution</u>

11.    In assessing the fairness and reasonableness of an agreement settling an FLSA action, District Courts in the Third Circuit have applied the factors set forth in <u>Girsh v. Jepson</u>, 521 F.2d 153 (3d Cir. 1975) for approval of settlements, whether claims were brought by individual employees or by a class of employees. <u>See also, e.g.</u>, <u>In re Chickie's & Pete's Wage & Hour Litig.</u>, No. 12–cv–6820, 2014 WL 911718, at *3 (E.D. Pa. Mar.7, 2014); <u>Lyons v. Gerhard's Inc.</u>, No. 14-cv-06693, 2015 WL 4378514, at *4 (E.D. Pa. July 16, 2015) (<u>Girsh</u> factors applied to claim of individual employee).

12.    The nine factors in <u>Girsh</u> are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

<u>Girsh</u>, 521 F.2d at 157 (quotation omitted).

13.    Here, where the settlement agreement does not grant individual employees payment of allegedly unpaid wages or overtime compensation, but does provide their union representatives a mechanism to recover any such compensation allegedly owed their members on the members' behalf, factors 1, 3, 4, and 5 merit closest scrutiny.

14.    Given the issues at play and the parties involved, continued litigation would prove complex, and expensive, and time consuming. This dispute involves potentially thousands of employees, multiple labor unions, high-ranking City officials, a complex automated payroll

system, and tens of thousands of pages of documents. It follows that such complex and burdensome litigation would stretch over a significant duration.

15.     This litigation has not progressed past pending motions to dismiss and opposition thereto, and discovery has been conducted to the extent necessary to realize agreement on terms of settlement. That said, the proposed settlement agreement creates a mechanism for additional litigation in the form of grievance arbitrations, litigation that will be assisted by the resolution of the instant matter.

16.     As for the fourth and fifth factors, both parties potentially face significant obstacles in establishing their respective burdens as to liability and damages. Plaintiffs must surmount the pending threshold dispute over FLSA coverage to proceed to establishing liability, which in itself is no easy task. Given the uncertainty of establishing liability, establishing damages may prove even more difficult and cumbersome. These same uncertainties cut both ways, leaving Defendants in on equally uncertain footing as to liability and damages.

17.     The parties submit that the proposed settlement agreement is fair and reasonable in light of: the complexity, expense, and duration of continued litigation; the early stages of this litigation and the agreed need for additional litigation in a separate forum; and the uncertainty of all parties regarding liability and damages.

18.     Further, the grievance mechanism created by the proposed settlement agreement will permit the parties to resolve the disputes of individual employees quickly, finally, and on the merits of each claim, a resolution unlikely to result from continued litigation in this Court.

19.     The parties respectfully request that this Honorable Court approve the settlement and enter an Order to that effect in the form of the proposed Order attached hereto.

**WHEREFORE**, Plaintiffs AFSCME District Council 47 Locals 2186 and 2187, and AFSCME District Council 33, Local 159, and Defendants, the City of Philadelphia, James F. Kenney, Robert Dubow, and Christian Dunbar, by and through undersigned counsel, respectfully move this Honorable Court to approve the Settlement Agreement, inclusive of releases of Fair Labor Standards Act (FLSA) wage and hour claims, reached between the parties.

Respectfully submitted,

**CITY OF PHILADELPHIA**
**LAW DEPARTMENT**

/s/ Daniel R. Unterburger
DANIEL R. UNTERBURGER
Assistant City Solicitor
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
215.683.5080
daniel.unterburger@phila.gov

**WILLIG,  WILLIAMS &**
**DAVIDSON**

/s/ John R. Bielski
JOHN R. BIELSKI
1845 Walnut Street, Suite 24
Philadelphia, PA 19103
215.656-3652
jbielski@wwdlaw.com

Date: February 22, 2021

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AFSCME DISTRICT COUNCIL 47, et al.,          :
                                             :
                         Plaintiffs,         :
                                             :
             v.                              :          Civil Action No. 19-5287-TJS
                                             :
THE CITY OF PHILADELPHIA, et al.             :
                                             :
                         Defendants.         :
                                             :

## SETTLEMENT AGREEMENT

**WHEREAS**, the plaintiffs are the American Federation of State, County, and Municipal Employees (AFSCME), District Council 33, Local 159, AFSCME District Council 47 ("DC 47"), and DC 47 Locals 2186 and 2187 (collectively, Plaintiffs or Unions); and

**WHEREAS,** the defendants are the City of Philadelphia (City), Mayor James F. Kenney, Rob Dubow, and Christian Dunbar (collectively, Defendants); and

**WHEREAS**, Plaintiffs allege violations of the Fair Labor Standards Act (FLSA), the Home Rule Charter, and the Civil Service Regulations, and seek a writ of mandamus along with declaratory relief; and

**WHEREAS**, Plaintiffs allege that their causes of action arise from the City's implementation of a modernized payroll processing system, called One Philly; and

**WHEREAS**, Defendants deny that they have, in any way, violated the FLSA, the Home Rule Charter, and the Civil Service Regulations, further deny that Unions have a private right of action under the FLSA, deny the existence in this matter of a bona fide dispute over issues of fact under the FLSA, and further deny that Plaintiffs are entitled to any of the relief sought in this action;

**WHEREAS**, the parties wish to resolve this matter without resort to further litigation;

**NOW, THEREFORE**, the parties agree as follows:

## I.    DEFINITIONS

1.    **"Arbitration Panel."**    The panel of four neutral arbitrators selected by the parties who will preside over the Consolidated Arbitrations and the Rolling Arbitrations.

2.    **"Arbitrator."**    A neutral arbitrator from the Arbitration Panel.

3.    **"Claim Portal."**    The web-based claim submission form accessible to bargaining unit members where they can report One Philly Issues.  The claim portal will be accessible within thirty

(30) days of approval of this Agreement by the U.S. District Court for the Eastern District of Pennsylvania.

4.   **"Consolidated Arbitration."**   An arbitration at which any One Philly Issues not resolved at the Consolidated Meeting are heard by an Arbitrator.

5.   **"Consolidated Meeting."**   A meeting between designated City and union representatives to discuss and/or resolve the One Philly Issues submitted through the Claim Portal.

6.   **"Consolidated One Philly Claims Summary."**   For each bargaining unit, an Excel spreadsheet incorporating all One Philly Issues timely submitted through the Claim Portal and all Pending One Philly Grievances.

7.   **"Dues Collection Procedure."**   The procedures the parties will follow if dues are incorrectly deducted from members' paychecks.

   a.   The following procedure will apply to any agreement regarding the incorrect collection of dues to Local 2186:

      i.   If the City deducted less than the required amount in dues, the City will deduct the balance from the employee's paycheck. The parties agree that the City will deduct no more than twice the dues amount in any single paycheck, and the deduction will continue until the full amount is remitted.  If the employee resigns or retires before the full amount is recouped, the balance will be deducted from any terminal leave payment. The City will have no further obligation to facilitate recoupment.

      ii.   If the City deducted more than the required amount in dues, Local 2186 will refund the overpayment to its affected members within thirty (30) days. Local 2186 will, in writing to the City, confirm that the overpayment has been refunded.

   b.   The following procedure will apply to any agreement regarding the incorrect collection of dues to Local 2187:

      i.   The parties recognize that Local 2187 maintains that, if the City deducted less than the required amount in dues, the City should pay the difference to Local 2187 from the City Treasury and not deduct the balance from the employee's paycheck.  The parties further recognize that Local 2187 intends to assert this claim in the Consolidated Meeting and may also submit it for resolution to the Consolidated Arbitration.  The City and Local 2187 agree that, if this claim is included in any Consolidated Arbitration with Local 2187, and if the neutral arbitrator concludes that the City is not required to pay any missing dues from City funds, the City will deduct no more than 50% more in dues in any single paycheck and the deduction will continue until the full amount is remitted, unless, within 10 business days of the award, Local 2187 notifies the City, in writing, that it waives its right to the missing dues.  If Local 2187 decides

2

to have the member repay the unpaid dues, and the employee resigns or retires before the full amount is recouped, the balance will be deducted from any terminal leave payment.  The City will have no further obligation to facilitate recoupment.

ii.   If the City deducted more than the required amount in dues, Local 2187 will refund the overpayment to its affected members within thirty (30) days. Local 2187 will, in writing to the City, confirm that the overpayment has been refunded.

8.     **"Employee Notification Period."**   The sixty (60) day notice period afforded bargaining unit members to timely submit their alleged One Philly Issues via the Claim Portal.

9.     **"Leave Balance Notification."**   An email communication sent by the City to each bargaining unit member notifying each bargaining unit member of their accrued leave balances, with this information to be taken from the bargaining unit member's most recent paystub.

10.     **"One Philly Issue."**   A failure arising from the One Philly payroll system to (a) pay bargaining unit employees the amounts of compensation due and owing under the respective collective bargaining agreement, (b) accurately make authorized deductions, including dues deductions, (c) forward authorized deductions to the appropriate person or entity, and (d) accurately record paid accrued leave time.  Disputes between the parties that do not constitute errors arising from the One Philly payroll system but, instead, an alleged violation of one of the collective bargaining agreements, are not included in this definition.  For example, if the City disputes that a collective bargaining agreement requires the payment of certain type of pay, the City's failure to pay such salary or wages is not a "One Philly Issue," as defined herein.  Further, "One Philly Issue" does not include any dispute previously resolved by the parties and a bargaining unit employee.

11.     **"One Philly Grievances."**   Any grievances alleging One Philly Issues filed after the close of the Employee Notification Period and in accordance with the rules of the Unions' respective collective bargaining agreements.

12.     **"Pending One Philly Grievances."**   All grievances or arbitrations alleging One Philly Issues submitted or demanded on or before the expiration of the Employee Notification Period. The parties agree that this definition includes, but is not limited to, the grievances and arbitrations listed on Exhibit "A."

13.     **"Request."**   An email sent by the City to each bargaining unit member requesting each member to submit any One Philly Issues to the Claim Portal within sixty (60) days, and informing each bargaining unit member that any issues not timely submitted to the Claim Portal will be waived.  The URL address for the Claim Portal will be included in the notice.

14.     **"Rolling Arbitration**."   An arbitration at which any One Philly Issues not resolved at the Rolling Meeting between the City and either AFSCME District Council 33, Local 159 or AFSCME District Council 47, Local 2187 are heard by an Arbitrator.

15.     **"Rolling Meeting."**   A meeting between designated City and union representatives to discuss and/or resolve grievances concerning One Philly Issues.

16.     **"Rolling One Philly Claims Summary."**   For each bargaining unit, after the close of the Employee Notification Period, an Excel spreadsheet incorporating all One Philly Grievances that were timely grieved.  In no event will One Philly Issues resolved at (a) the Consolidated Meeting or Consolidated Arbitration or (b) an earlier Rolling Meeting or Rolling Arbitration be included in the spreadsheet.

17.     **"Terminal Leave."**   The accrued paid time off paid by the City to employees who leave employment pursuant to the applicable collective bargaining agreement or memorandum of understanding and the applicable City Civil Service Regulations.

18.     **"Unions."**   Local 159 of the American Federation of State, County, and Municipal Employees ("AFSCME") District Council 33 ("Local 159"); AFSCME District Council 47 ("DC 47"); and AFSCME District Council 47 Locals 2186 ("Local 2186") and 2187 ("Local 2187").

## II.    ONE PHILLY ISSUES ARISING PRIOR TO THE EXPIRATION OF THE EMPLOYEE NOTIFICATION PERIOD

1.     **Timeliness.**  To resolve One Philly Issues arising prior to expiration of the Employee Notification Period, the parties agree that the Unions may pursue any payroll dispute determined to fall outside the agreed-upon definition of One Philly Issue through the grievance procedures of the relevant collective bargaining agreement, and the City agrees to waive any claims of untimeliness for payroll grievances for any claims accrued after the implementation of the One Philly system for per diem employees (Apr. 5, 2019) and salaried and uniform employees (Apr. 12, 2019), for claims raised during the Employee Notification Period and submitted to the City through the Claim Portal.

2.     **Notification and Claim Submission Procedures**.

   a.   Within thirty (30) days of approval of this Agreement by the U.S. District Court for the Eastern District of Pennsylvania, the City will provide a Leave Balance Notification to bargaining unit members at their City email address and shall email the Request to each bargaining unit employee at their City email address, asking them to report any and all purported errors in compensation, authorized deductions, remittance of those deductions, and/or the recording of paid accrued leave time that have arisen since the implementation of One Philly for their payroll group.

   b.   Bargaining unit members or their respective unions, on their behalf, shall have sixty (60) days from the date of the Leave Balance Notification and Request to submit, via the Claims Portal with mandatory fields for entry of the relevant information, their existing One Philly Issues to the City along with any supporting documentation. Supporting documentation shall include the employee's name and payroll number, the nature of the alleged error, the specific date(s) and/or pay period(s) when the alleged issue(s) occurred, and shall provide, if known, the specific amounts and types of errors in payroll, authorized deductions, remittance of authorized deductions, or the recording of paid accrued leave (the "Employee Notification Period").

    c.  At the conclusion of the Employee Notification Period, the City shall, within thirty (30) days, provide the One Philly Claims Summary to the presidents of the respective Unions.

3. **Consolidated Meeting.**

    a.  Within thirty (30) days of execution of this Agreement, the Unions will notify the City as to the order in which the Unions will meet with the City.

    b.  In no event will the City meet with more than two (2) Union(s) in a single thirty (30) day period.

    c.  Based on the notification of the meeting order as specified in section II(3)(A), the City will hold a Consolidated Meeting with each Union within thirty (30) to sixty (60) days of when the City has provided the One Philly Claims Summary to the presidents of the respective Unions to discuss, and, where possible, resolve the One Philly Issues identified on the Excel spreadsheet.  The first such Consolidated Meeting will be held with the Union that is specified—per section II(3)(A)—as proceeding first; subsequent Consolidated Meetings will be scheduled in accordance with the procedures set forth in this section.

    d.  At the Consolidated Meeting, the City will have representatives from the Department of Labor, the Office of the Director of Finance, and One Philly; the City may also include representatives of other departments and programs at its discretion.  The City's and Unions' representatives will have full authority to resolve any and all One Philly Issues discussed.

    e.  For any One Philly Issues that the City agrees should be paid, the City will make its best effort to make the bargaining unit member whole within two (2) pay periods from the date of the Consolidated Meeting, and in no event later than sixty (60) days after the Consolidated Meeting.

    f.  For any One Philly Issues that the Unions agree are resolved or otherwise invalid, the parties will mark those as closed and they may not be submitted to the Consolidated Arbitration.

    g.  All One Philly Issues timely submitted through the Claim Portal that remain unresolved after the Consolidated Meeting will be consolidated into a grievance and a demand for arbitration will issue, which will be submitted to a hearing no sooner than sixty (60) days from the date of the Consolidated Meeting.

4. **Consolidated Arbitration.**

    a.  No later than one hundred and twenty (120) days after the Consolidated Meeting, unless the parties agree otherwise, an Arbitrator will hear all unresolved One Philly Issues between the City and the Union that attended the first Consolidated Meeting and which are submitted as part of the consolidated grievance and demand.

    b.   All successive Consolidated Arbitrations between the City and the remaining Unions will be scheduled according to the procedure set forth in section II(4)(a).

    c.   All Consolidated Arbitrations will proceed in accordance with the American Arbitration Association's ("AAA's") Rules of Voluntary Labor Arbitration, except as modified by this Agreement, and, specifically, article IV of this Agreement.

## III.    RESOLUTION OF ONE PHILLY ISSUES ARISING AFTER THE EXPIRATION OF THE EMPLOYEE NOTIFICATION PERIOD

### 1.  <u>One Philly Grievances.</u>

    a.   For Locals 159 and 2187, all One Philly Grievances must be submitted in the manner specified in the respective Unions' collective bargaining agreement. No later than thirty (30) days after the individual Union's Consolidated Arbitration or most recent Rolling Arbitration, Locals 159 and 2187 shall identify for the City all One Philly Grievances not addressed in previous arbitrations or meetings that have reached Step IV of the grievance process in the Local's respective collective bargaining agreement.

    b.   For Local 2186, all initial One Philly Grievances must be submitted in the manner specified in its memorandum of understanding. No later than thirty (30) days after its Consolidated Arbitration, Local 2186 shall identify for the City all One Philly Grievances not addressed in previous arbitrations or meetings that have reached Step IV of the grievance process of the memorandum of understanding. Following the first Rolling Meeting, all subsequent One Philly Grievances must be submitted no later than sixty (60) days after the most recent Rolling Meeting.

### 2.  <u>Rolling One Philly Claims Summary.</u>  The City will send a Rolling One Philly Claims Summary for each Union within thirty (30) days of submission of that Union's One Philly Grievances that have reached Step IV.

### 3.  <u>Rolling Meeting.</u>

    a.   A meeting to discuss and, where possible, resolve the grievances on the Rolling One Philly Claims Summary will be held between the City and each Union within thirty (30) days of submission of the Rolling One Philly Claims Summary to the Union. This "Rolling Meeting" will take the place of the Step IV grievance meeting for One Philly Grievances.

    b.   At the Rolling Meeting, the City will have representatives from the Department of Labor, the Office of the Director of Finance, and One Philly; the City may also include representatives of other departments and programs at its discretion. The City's and Unions' representatives will have full authority to resolve any and all One Philly Grievances discussed.

    c.   For any One Philly Grievances that the City agrees should be paid, the City will make its best effort to make the bargaining unit member whole within two (2) pay periods

from the date of the Rolling Meeting, and in no event later than sixty (60) days after the Rolling Meeting.

d. The following procedures apply to Locals 159 and 2187:

    i. For any One Philly Grievances that the Unions agree are resolved or otherwise invalid, the parties will mark those as closed and they may not be submitted to the Rolling Arbitration.

    ii. All timely filed One Philly Grievances that remain unresolved after the Rolling Meeting will be consolidated into a grievance and a demand for arbitration will issue, which will be submitted to a hearing no sooner than sixty (60) days from the date of the Rolling Meeting.

e. Any One Philly Grievances submitted by Local 2186 will be resolved in accordance with its memorandum of understanding.

## 4. Rolling Arbitration.

a. No later than one hundred and twenty (120) days after the first Rolling Meeting, unless the parties agree otherwise, an Arbitrator will hear all unresolved One Philly Issues between the City and the Union that attended the first Rolling Meeting and which are submitted as part of the consolidated grievance and demand.

b. All successive Rolling Arbitrations between the City and the remaining Unions will be scheduled according to the procedure set forth in section III(4)(a).

c. All Rolling Arbitrations will proceed in accordance with the American Arbitration Association's ("AAA's") Rules of Voluntary Labor Arbitration, except as modified by this Agreement, and, specifically, article IV of this Agreement.

## IV.   ARBITRATION PANEL: SELECTION PROCESS, AUTHORITY, AND AWARDS

## 1. Panel Selection.

a. Initial Selection.  The parties agree that the initial Panel for the Consolidated and Rolling Arbitrations will consist of the following Arbitrators:  Margaret Brogan, Scott Buchheit, Robert Gifford, and Randi Elyse Lowitt.   In the event that any Arbitrator provides notice to the parties that they can no longer serve as a member of the Panel, or if they are otherwise barred from doing so under the terms of this Agreement, within ten (10) business days of such notification or condition, the parties will submit the names of four proposed neutral arbitrators to the other party.  Any name not stricken from these lists will become a member of the panel (the "Panel").  If the parties are unable to agree on four arbitrators, they will submit four additional names to the other party; any name not stricken will become a member of the Panel.  If, after this procedure is followed three times, the parties remain unable to agree on four arbitrators, they will request a list of at least 10 names from the American Arbitration Association from which both parties will strike.  Any names remaining

after both parties strike will become members of the Arbitration Panel.  This procedure will continue until there are at least four neutral arbitrators on the Panel.

b.  <u>Arbitrator Eligibility.</u>

    i.  Each member of the Panel must agree to provide at least four dates per year on which they are available for Consolidated and/or Rolling Arbitrations.  Any Arbitrator who cannot provide such dates will be removed from the Panel and replaced as described below.

    ii.  Each member of the Panel must agree to participate in training (agreed upon by both parties) regarding the One Philly payroll system and payroll practices.  This training will be scheduled in advance of the first Consolidated Arbitration and at a time when all Panel members, as well as the trainers, are available.  The City and the Unions may have a representative observe the training, but they will not be permitted to interrupt or ask questions during it.

c.  <u>Arbitrator Replacement by Parties.</u>  No later than the annual anniversary of the execution of this Agreement, each party may notify the other that it intends to remove one or more Arbitrators from the Panel.  The parties will then have a period of ten (10) business days to agree to substitute Arbitrators.  If they are unable to agree, substitute members of the Panel will be selected using the procedures described in subsection IV(1)(a), adjusted based on the number of vacancies to be filled (e.g., if there is one vacancy to be filled, each party will submit a list of two names).

d.  <u>Death, Disability, Retirement, or Unavailability of Arbitrator.</u>  If an Arbitrator must be removed from the Panel during the course of the calendar year due to death, disability, retirement or unavailability, the vacancy may be filled for the remainder of the calendar year in accordance with the procedures in section IV(1)(a).  When an Arbitrator has been removed from the Panel, the Arbitrator may not thereafter be proposed by either side as a substitute Arbitrator for a period of five (5) years, except by agreement of the parties

2.  <u>Authority of the Arbitrator.</u>

a.  An Arbitrator shall have no authority to add to, subtract from, or in any way alter the terms of the parties' collective bargaining agreement or the scale of wages set forth therein.

b.  <u>Remedies.</u>

    i.  Arbitrators are limited to "make whole" remedies.

    ii.  Any Award regarding incorrectly collected union dues will follow the Dues Collection Procedure.

3. <u>Awards.</u>

    a. <u>Consolidated Arbitrations.</u> After the evidentiary record is closed in the Consolidated Arbitration, the parties shall request that the Arbitrator render an award and opinion within thirty (30) calendar days from the date that the parties present an oral closing or submit post-hearing briefs. Briefs shall be submitted thirty (30) days after the evidentiary record is closed unless the parties agree to extend the deadline.

    b. <u>Rolling Arbitrations.</u> The parties shall request that the Arbitrator issue a written award for the payroll issues presented at the Rolling Arbitrations within one (1) business day of the arbitration, and he or she is limited to the remedies available under section IV(2)(B). To the extent that the Arbitrator is unable to hear all payroll issues during the scheduled arbitration date, the Arbitrator shall have the authority to schedule those issues for the next rotating arbitration date or schedule them for a new date outside the existing arbitration calendar as he or she feels necessary. Any party may request the Arbitrator to render a written opinion of a decided payroll issue, but that party will bear the cost of the written opinion.

4. <u>Miscellaneous.</u>

    a. <u>Correspondence.</u> Within ten (10) business days of the execution of this Agreement, each party will provide the other party with the name of a contact person(s) who will receive all correspondence with respect to the creation of, and matters before, the Panel.

    b. <u>Costs and Fees.</u> Except as otherwise noted in this Agreement, the costs and fees of arbitration shall be shared equally by the City and the respective Unions.

    c. <u>Continuances.</u> Any request to postpone a Consolidated or Rolling Arbitration may be granted by the Arbitrator to hear such arbitration, and any associated cancellation fees will be borne by the requesting party. Any continued case shall be heard by the Panel member originally scheduled to hear the case on a date mutually agreeable to the Panel member and the parties.

    d. <u>Cancellation.</u> If the Unions do not submit an arbitration demand for a Consolidated or Rolling Arbitration, they will, no later than forty-five (45) days before the scheduled date, notify the City and the Panel member that no hearing is necessary. If the Unions do not timely notify the City and the Panel, they will be solely responsible for any cancellation fee.

## V.   DUES REPORTS

      Each pay period, the City shall provide a copy of the dues' deduction remittance report in Excel to AFSCME District Council 47's President.

## VI.       DIMISSAL OF INDIVIDUAL DEFENDANTS

We, Plaintiffs, agree to dismiss with prejudice Mayor James F. Kenney, Rob Dubow, and Christian Dunbar, and any successor to the office of City Treasurer, from the above-captioned matter.

## VII.      RELEASE AND COVENANT NOT TO FINANCE LEGAL CLAIMS OF INDIVIDUAL BARGAINING UNIT MEMBERS

We, Plaintiffs, do hereby release and forever discharge Defendants, their agents, workers or employees, and any and all other persons, associations or organizations, whether known or unknown, foreseen or unforeseen, of all actual and/or potential liability accrued and hereafter to accrue on account of and from all actions and causes of action, claims and demands related specifically to, in law or equity, any claims under the Fair Labor Standards Act ("FLSA"), whether pursued seeking declaratory relief or pursued seeking issuance of a writ of mandamus, along with any claim for wages, compensatory or other damages, mandamus relief, claims arising under the City of Philadelphia's Home Rule Charter, claims arising under the Philadelphia Civil Service Regulations, injunctive relief, penalties, losses, attorneys' fees, costs, expenses, obligations, agreements, judgments and all other liabilities or remedies of any kind or description whatsoever, either in law or in equity, whether known or unknown, suspected or unsuspected, arising from our relationship with the City of Philadelphia and all other Defendants to this action, and any claims we ever had, now have, or which our heirs, executors, guardians ad litem, administrators or assigns, hereafter can, shall or may have, for, or by reason of any cause, matter or thing whatsoever arising from our relationship with Defendants, including, but not limited to: FLSA claims; claims in equity purporting to arise from the FLSA; claims arising from similar state and local statutes, laws and ordinances; claims arising from the City of Philadelphia Home Rule Charter or Civil Service Regulations, and/or claims for attorneys' fees, including litigation expenses and/or costs, for the consideration set forth in this Agreement. With the understanding that Plaintiffs cannot and therefore do not waive any claims individual bargaining unit members they represent may have under the FLSA, Plaintiffs hereby waive the labor unions' claims purporting to arise under the FLSA, the Philadelphia Home Rule Charter, or the Philadelphia Civil Service Regulations and agree not to finance or subsidize individual bargaining unit members in the pursuit of any claims related to OnePhilly and properly available to individual bargaining unit members under the FLSA, the Philadelphia Home Rule Charter, or the Philadelphia Civil Service Regulations, except as set forth in articles II and III of this Agreement.

## IX.      ADDITIONAL PROVISIONS

1.      **No Admission of Liability.**  In further consideration of the foregoing, Plaintiffs hereby agree, acknowledge and recognize that this Agreement is a "no fault" settlement in light of disputed claims, and that nothing contained in this Agreement shall constitute or be treated as an admission of liability or wrongdoing by Defendants, which liability or wrongdoing is expressly denied; nor shall this Agreement or its provisions be treated as an admission of any matter by Plaintiffs.

2.      **Authority to Release Claims.**  Plaintiffs represent and warrant that they have full power to make the releases and agreements contained herein.  Plaintiffs expressly represent and

warrant that they have not assigned, encumbered or in any manner transferred any portion of the claims covered by the releases and agreements contained herein.

3. **Court Approval.**  The parties acknowledge that this settlement is contingent upon approval by the United States District Court for the Eastern District of Pennsylvania and that, notwithstanding any other provision of this Agreement, the parties shall have no obligations under this Agreement unless the Court has first approved the settlement.

4. **Right to Know Act.**  The parties to this Agreement acknowledge that the City of Philadelphia is a public "local agency" under and subject to the Commonwealth of Pennsylvania's Right to Know Act (the "Act"), 65 P.S. § 67.101 et seq.  Notwithstanding anything to the contrary contained in this Release, nothing in this Release is intended to supersede, modify, or diminish in any respect whatsoever any of the City's rights, obligations, and defenses under the Act, nor will the City be held liable for any disclosure of records, including information, that the City determines, in its sole discretion, is a public record subject to disclosure under the Act.

5. **Rights Retained.**  Unless this Agreement expressly states otherwise, the parties retain all rights, obligations and remedies existing under the parties' collective bargaining agreement and the Public Employe Relations Act, 42 P.S. §§ 1101.101-.2301.

6. **Counterparts and Facsimile Signatures.**  This Agreement may be entered into in any number of counterparts, all of which taken together shall constitute one and the same instrument. Any party may enter into this Agreement by signing any such counterpart and each counterpart may be signed and executed by the Parties and transmitted by facsimile or electronic transmission and shall be valid and effectual as if executed as an original.

[signature page to follow]

_____
AFSCME District Council 47
Date:

_____
Office of the Director of Finance, City of
Philadelphia
Date:  2/22/2021

_____
AFSCME District Council 47, L. 2186
Date:

_____
Department of Labor, City of Philadelphia
Date: 2/20/2021

_____
AFSCME District Council 47, L. 2187
Date:

_____
AFSCME District Council 33, L. 159
Date:

_Catherine Scott_
AFSCME District Council 47
Date: 2/23/21

_____
Office of the Director of Finance, City of
Philadelphia
Date:

_____
AFSCME District Council 47, L. 2186
Date:

_____
Department of Labor, City of Philadelphia
Date:

_____
AFSCME District Council 47, L. 2187
Date:

_____
AFSCME District Council 33, L. 159

12

_____
AFSCME District Council 47
Date:

_____
Office of the Director of Finance, City of
Philadelphia
Date:

_____
AFSCME District Council 47, L. 2186
Date: 2/22/2021

_____
Department of Labor, City of Philadelphia
Date:

_____
AFSCME District Council 47, L. 2187
Date:

_____
AFSCME District Council 33, L. 159
Date:

12

_____
AFSCME District Council 47
Date:

Office of the Director of Finance, City of
Philadelphia
Date:

_____
AFSCME District Council 47, L. 2186
Date:

Department of Labor, City of Philadelphia
Date:

_____
AFSCME District Council 47, L. 2187
Date: 2/22/21

_____
AFSCME District Council 33, L. 159
Date:

_____
AFSCME District Council 47
Date:

_____
Office of the Director of Finance, City of
Philadelphia
Date:

_____
AFSCME District Council 47, L. 2186
Date:

_____
Department of Labor, City of Philadelphia
Date:

_____
AFSCME District Council 47, L. 2187
Date:

*Gregory Trueheart*

AFSCME District Council 33, L. 159
Date: *February 22 2021*

12

# EXHIBIT
# A

## TO SETTLEMENT AGREEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AFSCME DISTRICT COUNCIL 47, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 19-5287-TJS |
| | : | |
| THE CITY OF PHILADELPHIA, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## EXHIBIT A

### Grievances/Arbitration Demands Filed by AFSCME DC 47, Local 2187

1. Shift Differential Pay (Class Action):     AAA[1] Grievance No. 01-20-0000-2425

2. One Philly Payroll System (Class Action):     AAA Grievance No. 01-20-0014-5084

3. Conlan Crossley (Comp time):     AAA Grievance No. 01-21-0010-9245

4. LaFonda Waites:     AAA Grievance No. [unassigned]

---

[1] "AAA" is the American Arbitration Association, the venue the parties contractually agreed to utilize to resolve grievances.